[Cite as *State v. Habo*, 2013-Ohio-2142.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2012-P-0056** |
| KHALID A. HABO, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Portage County Municipal Court, Ravenna and Kent Divisions, Case No. R11 CRB 2650.

Judgment: Affirmed.

*Victor V. Vigluicci*, Portage County Prosecutor, and *Pamela J. Holder* and *Kristina Drnjevich*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*James E. MacDonald*, 212 Casterton Avenue, Akron, OH 44303 (For Defendant-Appellant).

TIMOTHY P. CANNON, P.J.

{¶1} Appellant, Khalid A. Habo, appeals the judgment of the Portage County Municipal Court, Ravenna Division, convicting him on one count of domestic violence following a jury trial. Appellant argues his conviction must be overturned because the trial court made multiple, improper evidentiary rulings which resulted in an unfair trial. He also argues the evidence is insufficient to support a conviction; the conviction is against the manifest weight of the evidence; and his trial counsel was ineffective.

Appellant additionally appeals the entry of sentence from the Portage County Municipal Court, Kent Division, arguing the trial court lost jurisdiction to sentence him due to an impermissible delay between conviction and sentence. For the reasons that follow, the judgment is affirmed.

{¶2} On October 4, 2011, two complaints were filed charging appellant with domestic violence; one charge alleged violence against his wife, Rehab Khattab, and one charge alleged violence against his daughter, age 7, known throughout the proceedings as "Juvenile A." Both charges were first-degree misdemeanors in violation of R.C. 2919.25(A). The record indicates the complaints were filed to replace case No. 2010 CRB 3230, which was dismissed by the state.

{¶3} Appellant pled not guilty, and the matter proceeded to a jury trial. During trial, testimony revealed the strenuous relationship between appellant and his wife. The undisputed evidence indicates the pair, who lived together in a house in Streetsboro, Ohio, with their three kids, became estranged and the relationship strained. After divorce proceedings initiated on October 22, 2010, the tranquility of the household further deteriorated. Exchanges between the pair were so charged and contentious that Ms. Khattab commenced the practice of secretly carrying around a concealed tape recorder. Testimony also indicated Ms. Khattab locked herself in her bedroom with the children on a daily basis. On November 19, 2010, one day after a hearing concerning temporary parental rights and responsibilities, appellant, exercising his parenting time, prepared to take his children to school for the first time since the divorce complaint was filed.

{¶4} There are two versions of events from this point forward. Ms. Khattab testified that the children did not want to go with appellant to school. Ms. Khattab explained that appellant previously threatened to take the children away from their mother, and as a result, the children were crying hysterically and generally resistant to appellant's efforts. Ms. Khattab explained appellant, visibly infuriated, violently grabbed the children from their waistband and threw them into his automobile. Ms. Khattab stated she was kicked for attempting to intervene and her daughter, Juvenile A, was smacked across the face for "talking back" and disobeying appellant's orders. Ms. Khattab audio recorded the incident in secret, the tape of which was played for the jury. The tape reveals loud crying and screaming. An audible smack can be heard with Ms. Khattab yelling out "don't hit my children."

{¶5} Appellant's testimony illustrated a different atmosphere on the day in question. Appellant testified he prepared the children's breakfast and packed their lunch in anticipation for the upcoming school day. Appellant explained his children entered his automobile without incident and he buckled them into their seats. He stated Ms. Khattab came charging out of the house in a disheveled and hysterical state. Appellant testified Ms. Khattab attempted to remove the children from the automobile while creating noise and confusion. Appellant explained Ms. Khattab staged the commotion for the tape recording by slapping her thigh while repeating "don't hit my children." Appellant denied ever hitting his wife or daughter.

{¶6} Officer Jason Fogleman responded to the disturbance call and testified at trial. Officer Fogleman noted that, as he approached the scene, he witnessed yelling, crying, screaming, and two adults engaged in a struggle in an open garage. Officer

3

Fogleman testified he interviewed Juvenile A, who explained she had been grabbed and slapped by appellant.

**{¶7}** On October 12, 2011, the jury acquitted appellant on the charge alleging domestic violence against his wife, but convicted him on the domestic violence charge against his daughter.

**{¶8}** Curiously, the record indicates appellant filed a motion, captioned "motion in limine," also on October 12, 2011, seeking to permit additional testimony from another witness, a court-appointed guardian ad litem for the children, which allegedly would affect the credibility of Ms. Khattab's version of events. The trial court denied the motion.

**{¶9}** On May 15, 2012, the trial court sentenced appellant to serve 180 days in jail and pay a $1,000 fine. The trial court stayed the prison term and $900 of the fine, contingent upon various conditions including successful completion of community work service and no violation of law for two years. The trial court also stayed execution of the sentence pending appeal.

**{¶10}** Appellant now appeals and asserts six assignments of error. Appellant's first assignment of error states:

**{¶11}** "The conviction of domestic violence was based upon insufficient evidence and the trial court erred as a matter of law in overruling appellant's Rule 29 motion at the close of the state's case-in-chief."

**{¶12}** Appellant first argues his conviction is based upon insufficient evidence. The state contends appellant has waived this argument on appeal because he did not *renew* his Crim.R. 29 motion at the completion of his case. In its entry of conviction, the

4

trial court noted that appellant's Crim.R. 29 motion was renewed at the close of all evidence. In fact, the record indicates appellant presented his Crim.R. 29 motion at the close of the state's case. When the trial court overruled the motion, appellant presented a defense; however, at the close of his case and the presentation of evidence, the record does not reflect that appellant renewed his Crim.R. 29 motion.

{¶13} We recognize there is a conflict among the appellate districts throughout Ohio as to whether the failure to renew a Crim.R. 29 motion at the close of all evidence in a jury trial results in waiver, on appeal, of the claim that the evidence was not supported by sufficient evidence. *See State v. Blake*, 12th Dist. No. CA2011-07-130, 2012-Ohio-3124, ¶45-50 (detailing the competing positions of the appellate split). We need not address this issue, however, because there is sufficient evidence in the record whereby a rational trier of fact could prove all elements of the charged offense beyond a reasonable doubt. *See State v. Griffin*, 6th Dist. No. L-11-1283, 2013-Ohio-411, ¶21 (recognizing the appellate split but finding no need to resolve it given the sufficient evidence in the record).

{¶14} Crim.R. 29(A) requires the trial court to grant a motion for acquittal if the evidence is insufficient to sustain a conviction on the charged offenses. The test for determining the issue of sufficiency is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, citing *Jackson v. Virginia*, 443 U.S. 307 (1979). Thus, the claim of insufficient evidence invokes a question of due

5

process, the resolution of which does not allow for a weighing of the evidence. *State v. Lee*, 11th Dist. No. 2010-L-084, 2011-Ohio-4697, ¶9.

**{¶15}** Appellant was convicted under R.C. 2919.25(A), which states: "No person shall knowingly cause or attempt to cause physical harm to a family or household member." Physical harm includes "any injury, * * * regardless of its gravity or duration." R.C. 2901.01(A)(3); *see also State v. McKinney*, 12th Dist. No. CA2011-08-162, 2012-Ohio-4521, ¶38. Appellant does not dispute his daughter is a "family or household member." Instead, he contends the state failed to present sufficient evidence that proved he knowingly caused or attempted to cause physical harm to Juvenile A. At trial, appellant's theory of the case was that he had no contact with the victim and would never harm a child, let alone his own child.

**{¶16}** In support, appellant highlights *State v. Adaranijo*, 153 Ohio App.3d 266, 2003-Ohio-3822 (1st Dist.), which reversed a domestic violence conviction following a bench trial on the grounds of insufficient evidence. Testimony elicited two versions of events in *Adaranijo*: one version that the defendant smacked his child, age 13, across the face, and one version that he did not. The First District explained, in either case, the defendant did not commit domestic violence under R.C. 2919.25(A). *Id.* at ¶10. The First District concluded that "without observable injury, or without risk of serious physical harm, there can be no domestic-violence conviction for a parent as a result of striking a child." *Id.* at. ¶13. Appellant argues there was no observable injury or serious physical harm in this case, and thus, the conviction is not supported by sufficient evidence. However, this decision appears to be in conflict with First District precedent explaining that "R.C. 2919.25(A) does not require any finding of injury, only an attempt to cause

6

harm." *State v. Whitfield*, 1st Dist. No. C-020241, 2002-Ohio-5984, ¶13. Indeed, by its express language, the domestic violence statute does *not* require either observable injury or a risk of "serious physical harm"; it requires the perpetrator to either knowingly cause or attempt to cause physical harm to a family or household member.

{¶17} In *City of Warren v. Culver*, 11th Dist. No. 2003-T-0023, 2004-Ohio-333, this court examined the language of Warren Ordinance 537.14(a), which is identical to the language of the domestic violence statute here, R.C. 2919.25(A). We concluded that "the existence of an injury is *not* an essential element of the crime of domestic violence," and "[a]s long as there was competent, credible evidence before the jury that Culver *attempted* to cause Mrs. Culver physical harm, there was evidence sufficient to sustain the conviction." (Emphasis added.) *Id.* at ¶12. In *City of Niles v. Cadwallader*, 11th Dist. No. 2003-T-0137, 2004-Ohio-6336, we cited *Culver* with approval while examining Niles City Ordinance 537.14(A), which also mirrors the subject domestic violence statute. We again established that the "prosecution was not required to establish the existence of actual physical injury." *Id.* at ¶17. We affirmed the conviction after concluding there was sufficient evidence presented establishing the appellant's attempt to cause physical harm to a family member. *Id.* at ¶19.

{¶18} Here, there is sufficient evidence to support a finding that appellant knowingly caused or attempted to cause physical harm to sustain a conviction of domestic violence against Juvenile A, to wit: Ms. Khattab testified she observed appellant smack their daughter across the face; a tape recording of the incident revealed an audible smack, children frantically crying, and Ms. Khattab hysterically

7

yelling "don't hit my children"; Officer Fogleman testified to Juvenile A's statement that her father smacked her across the face.

{¶19} Appellant argues in the alternative that, assuming he did contact the victim, he did not exceed his rights of parental discipline. The Ohio Supreme Court, in *State v. Suchomski*, 58 Ohio St.3d 74, 75 (1991), recognized the right of parents to control and raise their own children by imposing reasonable physical discipline to punish the child's misconduct. The Court recognized "injury" to be the invasion of any legally-protected interest, and a child does not have a legally-protected interest that is invaded by proper and reasonable parental discipline. This stems from a parent's right to manage the rearing of his or her child, a fundamental liberty interest. *State v. Hause*, 2d Dist. No. 17614, 1999 Ohio App. LEXIS 3627 (Aug. 6, 1999), *6, citing *Santosky v. Kramer*, 455 U.S. 745 (1982). Accordingly, the domestic violence statute does not prohibit a parent from properly disciplining his or her child, and "[a] parent may use physical punishment as a method of discipline without violating the domestic violence statutes as long as the discipline is proper and reasonable under the circumstances." *State v. Vandergriff*, 11th Dist. No. 99-A-0075, 2001 Ohio App. LEXIS 4285 (Sept. 21, 2001), *10.

{¶20} However, the accused bears the burden of establishing parental discipline as an affirmative defense. *State v. Phillips*, 10th Dist. No. 12AP-57, 2012-Ohio-6023, ¶18, citing *State v. Zielinski*, 12th Dist. No. CA2010-12-121, 2011-Ohio-6535, ¶27; *see also Vandergriff*, *supra*, at *10, and *Cadwallader*, 2004-Ohio-6336, ¶23 ("in domestic violence cases where the victim is a child, appellate courts have recognized the *affirmative defense* of 'proper and reasonable parental discipline' of the child"). Indeed,

8

"[a]s the defense presents a question of fact, it is only capable of resolution by trial on the general issue." *Vandergriff*, *supra*, at *11.

{¶21} At trial, appellant did not pursue this theory of the case; instead, he maintained he had no contact with the victim. He therefore did not raise this affirmative defense during trial nor did he elicit any testimony that would support it. Appellant points again to *Adaranijo*, where the First District concluded that, even though the defendant did not assert it, the evidence manifestly raised and proved the parental discipline affirmative defense on his behalf. *Id.* at ¶13. Regardless of the propriety of an appellate court raising and accepting on an appellant's behalf an affirmative defense not previously raised at the trial level, we cannot ignore that the burden of proof rested on appellant to make a prima facie case of parental discipline as an affirmative defense. It was therefore incumbent upon him to meet the burden of production by producing or coming forward with sufficient evidence to establish the affirmative defense. *See Vandergriff*, *supra*, at *11. It was additionally incumbent upon appellant to meet the burden of persuasion by arguing that the evidence successfully established the defense. *Id.* Further, "[a]n essential part of raising the defense is getting a jury instruction that permits a finding [that reasonable parental discipline] has been met." *Id.* at *11.

{¶22} Rather than pursue this defense, appellant argued he had no contact with the victim whatsoever. In fact, appellant used propensity logic to suggest it was not in his character to ever hit a child, given his duty as a pediatrician. Appellant testified that, in his profession, he regularly advises parents about the dangers of smacking or spanking a child, explaining such abuse "would never be productive." Presenting the

9

parental discipline defense for the first time on appeal undermines appellant's principle theory of the case and was never before the jury for consideration in this case. It will not be considered for the first time now.

**{¶23}** Even if the affirmative defense had been raised, we note "[a] review for sufficiency of the evidence does not apply to affirmative defenses, because the review does not consider the strength of the defense evidence." *State v. Phillips*, 10th Dist. No. 12AP-57, 2012-Ohio-6023, ¶13, citing *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, ¶37. In *Phillips*, the defendant argued his conduct was insufficient to constitute domestic violence against his minor child because he used proper and reasonable parental discipline. *Id*. The defendant in *Phillips* raised the affirmative defense at trial. *Id*. However, the Tenth Appellate District explained that the defendant could not challenge the jury's rejection of his claim of reasonable parental discipline on the basis of sufficiency because a claim of insufficient evidence challenges the sufficiency of the state's evidence. *Id*.

**{¶24}** Appellant's first assignment of error is without merit.

**{¶25}** Appellant's second assignment of error states:

**{¶26}** "The conviction is against the manifest weight of the evidence."

**{¶27}** To determine whether a verdict is against the manifest weight of the evidence, a reviewing court must consider the weight of the evidence, including the credibility of the witnesses and all reasonable inferences, to determine whether the trier of fact "lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). In weighing the evidence submitted at a criminal trial, an

appellate court must defer to the factual findings of the trier of fact regarding the weight to be given the evidence and credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. Further, "[n]o conviction resulting from a trial by jury shall be reversed on the weight of the evidence except by the concurrence of all three judges hearing the appeal." *Webber v. Kelly*, 120 Ohio St.3d 440, 2008-Ohio-6695, ¶6.

{¶28} Appellant's principle contention under his second assignment of error is that the conviction is against the manifest weight of the evidence because it is "based upon uncorroborated and contradictory hearsay[.]" The jury in this case was indeed presented with two versions of events. It must be emphasized that the trier of fact is in the best position to evaluate testimony and resolve inconsistencies, if any, by observing the witness's manner and demeanor on the witness stand—attributes impossible to glean through a printed record. *See generally State v. Sevilla*, 10th Dist. No. 06AP-954, 2007-Ohio-2789, ¶14. We therefore afford the jury verdict deference. In addition to the conflicting version of events offered by Ms. Khattab and appellant, either of which the jury could have believed, the evidence included the statement made by Juvenile A to the police that her father had hit her. This supported Ms. Khattab's version of events. After a detailed review of the record, we find the jury verdict is not against the manifest weight of the evidence.

{¶29} Appellant's second assignment of error is without merit.

{¶30} Appellant's third assignment of error states:

{¶31} "The trial court erred as a matter of law and committed plain and cumulative error in: (1) the admission of testimonial statements to the police; (2) the

11

failure to have an interpreter to interpret the Arabic on the tape played to the jury; and (3) allowing Ms. Khattab to testify to highly prejudicial and discriminatory ethnicity-based statements."

{¶32} A court's evidentiary rulings are reviewed under an abuse of discretion standard. *State v. Poling*, 11th Dist. No. 2008-A-0071, 2010-Ohio-1155, ¶19, citing *State v. Sweeney*, 11th Dist. No. 2006-L-252, 2007-Ohio-5223, ¶22. Even where a court abuses its discretion in the admission of evidence, we must review whether the defendant suffered material prejudice due to the ruling. *Id*.

{¶33} Appellant argues that, under the doctrine of cumulative error, three separate evidentiary rulings allegedly made in error compound into prejudicial error. "The cumulative error doctrine provides that while certain errors, individually, may not be prejudicial, when those errors are combined the aggregate effect denies the defendant a fair trial." *State v. Jackson*, 11th Dist. No. 2008-T-0024, 2010-Ohio-1270, ¶43, citing *State v. DeMarco*, 31 Ohio St.3d 191 (1987), paragraph two of the syllabus.

{¶34} The record indicates appellant did not object to any of the three purported evidentiary errors. Accordingly, appellant has waived all but plain error. Crim.R. 52(B) provides: "[p]lain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Plain error is present only if the error is obvious and, but for the error, the outcome of the trial clearly would have been different." *State v. Turner*, 11th Dist. No. 2010-A-0060, 2011-Ohio-5098, ¶34, citing *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶108. This court will recognize plain error, "'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *State v. Landrum*, 53 Ohio St.3d

107, 111 (1990), quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus. It is appellant's burden to demonstrate plain error. *Id.*

**{¶35}** Appellant first contends the trial court erred in admitting Juvenile A's "testimonial" statements to the police. Appellant contends his Sixth Amendment Confrontation Clause rights were violated when Officer Fogleman testified to what Juvenile A told him during the on-scene interview. Officer Fogleman testified during the state's case-in-chief that the victim, Juvenile A, explained "[appellant] had grabbed her by the neck and at one point had slapped her." Conversely, the state contends that, even if the Confrontation Clause was implicated, any error in this case is harmless error. As set forth above, however, we are to employ a plain error analysis. As noted by the Tenth Appellate District: "Where preserved by objection, review of Confrontation Clause claims is for harmless error. Confrontation Clause claims not preserved by objection are reviewed for plain error * * *." *State v. Scott*, 10th Dist. No. 05AP-1144, 2006-Ohio-4981, ¶11, fn. 4.

**{¶36}** "It is a well established principle that Confrontation Clause rights, like other constitutional rights, can be waived." *State v. Pasqualone*, 121 Ohio St.3d 186, 2009-Ohio-315, ¶14. Not only can a defendant waive this right, but "a defendant's counsel generally is capable of waiving Confrontation Clause rights without the specific approval of the defendant." *Id.* at ¶22. This is because "a lawyer must have 'full authority to manage the conduct of the trial. The adversary process could not function effectively if every tactical decision required client approval.'" *Id.* at ¶24, quoting *Taylor v. Illinois*, 484 U.S. 400, 418 (1988). "'[D]ecisions by counsel are generally given effect as to what arguments to pursue, * * * what evidentiary objections to raise, * * * and what

13

agreements to conclude regarding the admission of evidence * * *. Absent a demonstration of ineffectiveness, counsel's word on such matters is the last.'" *Id.*, quoting *New York v. Hill*, 528 U.S. 110, 115 (2000).

{¶37} Given the unique facts of this case, we recognize that the failure to object at the trial level on the grounds the statement was testimonial and implicated the Confrontation Clause may have been a tactical decision and thus an intentional relinquishment of the right. Indeed, Officer Fogleman's recounting of the events in lieu of having Juvenile A take the stand to offer emotionally-charged testimony could have been beneficial to appellant. Nothing in the record indicates Juvenile A was found incompetent to testify. Additionally, the failure or decision not to object clearly affected the manner in which the state presented its case-in-chief. As appellant did not object, and as the statement became evidence for the jury's consideration, the state had no need to call Juvenile A to testify or otherwise attempt to introduce the statement. That evidence is therefore naturally not before this court in the record. It is simply not clear whether this failure was deliberate. Accordingly, appellant has not met the burden of establishing plain error. Further, under appellant's line of reasoning, the trial court, to avoid the alleged error in this case, would have been required to raise an objection *on behalf of* appellant.

{¶38} Appellant did not call his daughter to testify. This could be for a multitude of reasons. One could be that he believed her testimony would be harmful to his cause. It may have been much less damaging to allow the officer to testify on a limited basis to what Juvenile A told him. In fact, if that was the case, and there is a retrial, new counsel might come to the exact same conclusion as the original trial counsel. The reality is this

14

type of claimed ineffective assistance can typically only be vetted in a postconviction petition hearing. That setting is needed to clarify what occurred and why, and be preserved for the record. Otherwise, we might erroneously speculate that a potentially ineffective decision at trial was, in reality, a prudent one.

{¶39} As appellant relies on cumulative error, we need not address the other points under this assignment of error. Nonetheless, the failure to have an interpreter to interpret the Arabic on the tape played to the jury and allowing "discriminatory ethnicity-based" statements do not rise to the level of plain error, especially when appellant could offer his own interpretation of the Arabic on the tape. Appellant testified in this case. If there were erroneous interpretations made, he had every opportunity to offer testimony to that effect, but chose not to. Because he offered no contradictory interpretation of what was on the tape, it was not error for the trial court to fail to hire a third party to interpret the statements. Further, Ms. Khattab's translations detailed how appellant called her a dog and accused her of being unreligious; the comments were not material to the issue of domestic violence.

{¶40} Appellant's third assignment of error is without merit.

{¶41} Appellant's fourth assignment of error states:

{¶42} "The trial court abused its discretion in overruling appellant's motion in limine thereby foreclosing the possibility to impeach the statements of Juvenile A or to impeach the state's witness. Further, the cumulative effect of the errors in the third and fourth assignments of error resulted in an unfair trial."

{¶43} "A 'motion in limine' is defined as a 'pretrial request that certain inadmissible evidence not be referred to or offered at trial.'" *State v. Freeze*, 12th Dist.

15

No. CA2011-11-209, 2012-Ohio-5840, ¶43, quoting *Black's Law Dictionary* (9th Ed.2009). The record before this court indicates appellant filed a motion *after* trial, seeking to *include* additional testimony from new witnesses. It therefore appears the motion was erroneously captioned "motion in limine."

{¶44} Moreover, in order to preserve any error for this appeal, appellant should have made the record by calling these witnesses at trial and, if the anticipated testimony was indeed met with successful objection, proffer the testimony or make the substance of the testimony known to the court outside the presence of the jury, pursuant to Evid.R. 103(A)(2) and (A)(2)(C). Appellant neither introduced the witnesses nor proffered the subject testimony or the substance of the testimony in any capacity at (or before) trial and has therefore not preserved any error for this appeal.

{¶45} Appellant's fourth assignment of error is without merit.

{¶46} Appellant's fifth assignment of error states:

{¶47} "The defendant was denied a fair trial based upon the ineffective assistance of trial counsel."

{¶48} In order to prevail on an ineffective assistance of counsel claim, appellant must demonstrate that trial counsel's performance fell below an objective standard of reasonable representation, and there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus, adopting the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). If a claim can be disposed of by showing a lack of sufficient prejudice, there is no need to consider the first prong, i.e., whether trial counsel's performance was deficient. *Id.* at 142, citing *Strickland* at 695-696. There is

16

a general presumption that trial counsel's conduct is within the broad range of professional assistance. *Id.* at 142-143.

**{¶49}** Appellant argues his trial counsel provided ineffective assistance for numerous reasons. We note appellant has not included as one of these reasons trial counsel's failure to object to Officer Fogleman's testimony regarding Juvenile A's statement on either hearsay or Confrontation Clause grounds. Therefore, this particular failure to object will not be considered in our analysis. *See* App.R. 16(A).

**{¶50}** First, appellant contends trial counsel was ineffective for failing to make any arguments to support the Crim.R. 29(A) motion. However, as set forth above, the conviction is supported by sufficient evidence, and thus, it cannot be concluded that any failure to argue more specific points in the Crim.R. 29 motion before the trial court prejudiced appellant in any way.

**{¶51}** Next, appellant contends his counsel should have objected to alleged "prior bad acts" testimony wherein Ms. Khattab detailed "years of abuse and fighting" and suggested that physical violence against one's wife was permissible in Egyptian culture. We note "failure to object is within the realm of trial tactics and, therefore, does not definitively establish deficient performance by counsel." *State v. Gray*, 2d Dist. No. 20980, 2007-Ohio-4549, ¶20. In this matter, it simply cannot be concluded that appellant was prejudiced by these passing comments, especially when appellant was acquitted on the domestic violence charge as against his wife.

**{¶52}** Appellant additionally argues his trial counsel should have objected to Ms. Khattab's "de facto interpretation" of portions of Arabic heard on the tape of the incident. We cannot conclude trial counsel's performance fell below an objective standard of

17

reasonable representation because appellant, who also spoke Arabic and took the witness stand, could have rebuked any improper or incorrect interpretation. There is nothing in the record to suggest her interpretations were, in fact, incorrect.

{¶53} Appellant also argues his trial counsel failed to file a motion to dismiss on speedy trial grounds. We note that appellant, after the state of Ohio filed its brief on appeal, asked this court to supplement the record on appeal with the docket and filings contained in a previously-filed case. This request was denied by this court. In his merit brief, appellant concedes there is a notation on a pretrial report from the prior case that he waived speedy trial; however, he argues there is nothing signed by him that illustrates he knowingly and voluntarily waived his speedy-trial right. This notation illustrates the need to have this type of claim resolved in a postconviction petition proceeding. Whether the statutory or constitutional speedy trial time limits were exhausted is not a matter that can be resolved in the record before this court, nor could it be resolved merely by supplementing the record with the prior case record. A postconviction relief proceeding would allow both parties to introduce evidence and/or testimony that would allow the issue to fully be addressed.

{¶54} Finally, appellant asserts that the failure to raise the affirmative defense of proper and reasonable parental discipline, when the facts prove it, is ineffective assistance of counsel. However, it is well established that strategic and tactical decisions of trial counsel fall within the scope of objectionably reasonable judgment. *Strickland v. Washington*, 466 U.S. 668, 699 (1984). The decision to assert the defense that appellant had no contact with the victim was within the realm of trial tactics.

{¶55} Appellant's fifth assignment of error is without merit.

**{¶56}** Appellant's final assignment of error states:

**{¶57}** "The trial court erred as a matter of law and lost jurisdiction to sentence appellant due to an impermissible delay between conviction and sentence."

**{¶58}** Appellant argues the approximately seven-month time span in between the verdict and sentence was unreasonable, unnecessary, and impermissible.

**{¶59}** We are mindful of the authority cited by appellant: that Crim.R. 32 provides a "[s]entence shall be imposed without unnecessary delay" and that Sup.R. 39(B)(4) provides "the court shall impose sentence or hold a sentencing hearing with all parties present within fifteen days of the verdict or finding of guilt or receipt of a completed presentence investigation report." It must be recognized, however, that the "rules of superintendence are merely guidelines for judges and are not the equivalent of rules of procedure and practice." *State v. Beam*, 77 Ohio App.3d 200 (11th Dist.1991).

**{¶60}** This court has previously found delays between conviction and sentencing to be unreasonable and unnecessary, though it has been in circumstances where there was no reason for the delay. *See City of Warren v. Ross*, 116 Ohio App.3d 275 (11th Dist.1996) (more than four years passed between conviction and sentence and the record failed "to provide any reason whatsoever for this delay"); *Willoughby v. Lukehart*, 39 Ohio App.3d 74 (11th Dist.1987) (more than one year passed between conviction and sentence for no apparent reason). Here, however, the record indicates reasons justifying the delay of approximately seven months: appellant filed post-verdict motions, including a motion for new trial, which required consideration and disposition; a presentence investigation report was ordered; and the court transferred the cause from the Ravenna Division to the Kent Division.

19

{¶61} Appellant's sixth assignment of error is without merit.

{¶62} Accordingly, the judgment of the Portage County Municipal Court, Ravenna and Kent Divisions, is affirmed.


THOMAS R. WRIGHT, J., concurs,

COLLEEN MARY O'TOOLE, J., concurs in judgment only.