[Cite as *State v. Fenton*, 2015-Ohio-5464.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**ASHTABULA COUNTY, OHIO**

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2015-A-0011** |
| AUTUMN E. FENTON, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas.
Case No. 2014 CR 00362.

Judgment: Affirmed.

*Nicholas A. Iarocci*, Ashtabula County Prosecutor, and *Shelley M. Pratt*, Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047-1092 (For Plaintiff-Appellee).

*Michael A. Hiener*, P.O. Box 1, Jefferson, OH 44047 (For Defendant-Appellant).

TIMOTHY P. CANNON, P.J.

{¶1}  Appellant Autumn E. Fenton appeals from the January 13, 2015 judgment of the Ashtabula County Court of Common Pleas, following a jury trial, convicting and sentencing her on four felony counts.  For the following reasons, the judgment of the trial court is affirmed.

{¶2}  On July 10, 2014, appellant was indicted on four counts: Count 1, illegal manufacture of drugs, a first-degree felony in violation of R.C. 2924.04(A) and (C)(3)(b);

Count 2, illegal assembly or possession of chemicals for the manufacture of drugs, a second-degree felony in violation of R.C. 2925.041(A)(C)(2); Count 3, endangering children, a third-degree felony in violation of R.C. 2919.22(B)(6)(E)(3)(a); and Count 4, aggravated possession of drugs, a second-degree felony in violation of R.C. 2925.11(A)(C)(1)(c).

{¶3} Appellant pled not guilty, and the case proceeded to a jury trial. The trial judge instructed the jury on complicity as to all four counts of the indictment. The jury found appellant guilty of all four counts. She was sentenced to four years in prison on Count 1; three years in prison on Count 2; one year in prison on Count 3; and three years in prison on Count 4. The trial court ordered the sentences to be served concurrently with each other for a total of four years in prison.

{¶4} Appellant filed a timely notice of appeal and raises one assignment of error with two issues:

{¶5} "The jury verdict is against the manifest weight of the evidence and the sufficiency of the evidence."

{¶6} When determining whether there is sufficient evidence presented to sustain a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307 (1979). Thus, the claim of insufficient evidence invokes a question of due process, the resolution of which does not allow for a weighing of the evidence. *State v. Habo*, 11th Dist. Portage No. 2012-P-0056, 2013-Ohio-2142, ¶14.

{¶7} To determine whether a verdict is against the manifest weight of the evidence, a reviewing court must consider the weight of the evidence, including the credibility of the witnesses and all reasonable inferences, to determine whether the trier of fact "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). In weighing the evidence submitted at a criminal trial, an appellate court must defer to the factual findings of the trier of fact regarding the weight to be given the evidence and credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus.

{¶8} In order to convict appellant of the four counts in the indictment, the state had to prove beyond a reasonable doubt that all of the following occurred on or between October 1, 2013, and November 2, 2013:

{¶9} On Count One, Illegal Manufacture of Drugs, that appellant knowingly manufactured or otherwise engaged in any part of the production of methamphetamine and did so in the vicinity of juveniles. *See* R.C. 2925.04(A) & (C)(3)(b).

{¶10} On Count Two, Illegal Assembly or Possession of Chemicals for the Manufacture of Drugs, that appellant knowingly assembled or possessed one or more chemicals that may be used to manufacture methamphetamine with the intent to manufacture methamphetamine and that she did so in the vicinity of juveniles. *See* R.C. 2925.041(A) & (C)(2).

{¶11} On Count Three, Endangering Children, that appellant recklessly allowed children under the age of 18 to be on the same parcel of real property and within 100

feet of any act in violation of R.C. 2925.04 or R.C. 2925.041 and that she knew the act was occurring, even if no one was convicted of the R.C. 2925.04 or R.C. 2925.041 violation that is the basis of the endangering children violation. *See* R.C. 2919.22(B)(6) & (E)(3)(a).

{¶12} On Count Four, Aggravated Possession of Drugs, that appellant knowingly obtained, possessed, or used methamphetamine in an amount equal to or exceeding five times the bulk amount, but less than fifty times the bulk amount. *See* R.C. 2925.11(A) & (C)(1)(c).

{¶13} Additionally, Ohio's complicity statute states, in pertinent part: "No person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense[.]" R.C. 2923.03(A)(2). "Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if [she] were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense." R.C. 2923.03(F).

{¶14} Appellant argues there was insufficient evidence upon which the trier of fact could reasonably conclude the elements of these offenses occurred within the time frame of the indictment, i.e., on or between October 1, 2013, and November 2, 2013.

{¶15} The following evidence was adduced at appellant's trial:

{¶16} Detective Sergeant Michael Colby testified the Conneaut City Police Department received an anonymous tip of two men manufacturing methamphetamine at a house on Orange Street in the city of Conneaut and children were living in the house. Detective Sergeant Colby and Detective Sullivan patrolled Orange Street and began

4

watching 426 State Street, on the corner of Orange Street. The officers had reason to believe, from the anonymous tip, that they would find Eric Osborne at this house. Osborne had an active warrant in Conneaut for violating his probation from a previous charge of illegally purchasing pseudoephedrine.

{¶17} On November 1, 2013, the officers parked in the driveway of the house; Detective Sergeant Colby knocked on the rear door, and Detective Sullivan knocked on the front door. Appellant and her boyfriend, Jeremy Shook, answered the rear door and granted the officers permission to enter the house. They told the officers that Osborne lived there but was not home, and Shook gave the officers permission to search the house for Osborne.

{¶18} After the officers searched the first and second floors, Shook told them that Eric Osborne stayed in the attic with his girlfriend, Tara Bond, and her three young children. Detective Sergeant Colby entered the attic to search for Osborne; Bond and the children were upstairs, but Osborne was not. The detective testified that the oldest of Bond's children was approximately 5 or 6 years of age, one was a toddler, and the youngest was still in diapers.

{¶19} After exiting the attic, Shook took Detective Sergeant Colby aside and informed him he had a methamphetamine lab in the basement. He also showed Detective Sergeant Colby a plastic container on wheels that contained Drano, paper towels, rags, coffee filters, and an empty sports bottle. Shook told the detective that he used these items to manufacture methamphetamine.

{¶20} Detective Sergeant Colby then entered the basement through an unlocked door. The detective located a cardboard box with a Mountain Dew bottle at the bottom

of the stairs. Shook indicated the bottle was a methamphetamine lab and also directed the detective to multiple Gatorade bottles that he used as gas generators for the production of methamphetamine.

{¶21} Detective Sergeant Colby called Patrolman Denny Moore, the police department's clandestine lab technician. The detective also turned the thermostat in the house to its lowest setting and opened every door and window due to the combustible hazards of a methamphetamine lab. Shook gave Detective Sergeant Colby written permission to search the residence for additional methamphetamine lab components. At no time did appellant object to the search.

{¶22} A search of the bedroom shared by Shook and appellant revealed drug paraphernalia, pipes used in smoking marijuana and powdered narcotics, razor blades, coffee filters, lithium batteries, needles, and pseudoephedrine pills. In the attic, the detective found Bond's identification card, drug paraphernalia, pipes, razor blades, and a hollowed-out light bulb used for smoking narcotics. Another methamphetamine lab and gas generator were also found in the attic.

{¶23} Two young girls also arrived at the house that afternoon after school and identified themselves as appellant's daughters. They were between approximately 12 and 14 years old.

{¶24} Patrolman Moore, the clandestine lab technician, testified that he observed a methamphetamine lab in the basement and a box containing several Gatorade bottles used as gas generators. He described this lab as "active" because it was still bubbling and a chemical reaction was taking place. Patrolman Moore also located an inactive methamphetamine lab in the attic of the house. He testified that he

6

filtered off methamphetamine oil from both the active and inactive labs. Detective Sergeant Colby transported the oil, some powder, and coffee filters to the Bureau of Criminal Identification and Investigation for testing. Stephanie Laux, a drug chemist employed by BCI, testified that all of these items tested positive for methamphetamine. She also testified that the oil amounted to 21.9 grams of methamphetamine: over five times the bulk weight defined by statute (i.e., 3 grams).

{¶25} Detective Sergeant Colby also testified regarding the interviews he conducted with Shook and appellant at the Conneaut Police Department. Shook told the detective he had been cooking methamphetamine in the house for approximately three months and that appellant was aware it was being manufactured in the house. He also told the detective that appellant once purchased pseudoephedrine for him a couple days before he "did a lab" and that she once held a funnel for him while he was draining a bottle.

{¶26} Following Shook's interview, Detective Sergeant Colby checked the National Precursor Log Exchange to determine if and when appellant had purchased pseudoephedrine. The NPLE revealed she made two such purchases in September 2013 and two in October 2013; the most recent purchase took place on October 24, 2013. Detective Sergeant Colby testified that Shook told him the last time he had manufactured methamphetamine was on Halloween in October 2013.

{¶27} Appellant was also interviewed by Detective Sergeant Colby on November 12, 2013, the substance of which was introduced at trial. She told the detective she had lived at 426 State Street since September 29, 2013. According to appellant, Shook and Osborne started a methamphetamine lab in the attic of the house three weeks prior to

7

her statement, which would have been during the month of October 2013. She indicated there were two or three methamphetamine labs in the attic and two in the basement; a Mountain Dew bottle housed the labs and Gatorade bottles housed the gas generators. Appellant told the detective there was an agreement in the household that methamphetamine would not be manufactured while the children were in the home. She admitted that she helped with one of the labs; that she purchased pseudoephedrine for Shook to use in manufacturing methamphetamine; and that she was present when Shook and Osborne were manufacturing.

{¶28} Shook also testified at appellant's trial. He stated that he lived at 426 State Street with appellant until his incarceration for illegal manufacture of methamphetamine. Shook testified that he permitted the officers to search the house on November 1, 2013, and that no one living in the house objected to the search. He also testified that appellant's two children lived at the residence, approximately 13 and 14 years old, and that Osborne and Bond lived at the residence with Bond's three young children. Shook testified that all five children resided at the house the last time he cooked methamphetamine, but that they were never present at the time of the cooks.

{¶29} Shook testified that appellant was aware he was manufacturing methamphetamine in the home and that he had done so at least six times while she was present. He stated the last time he cooked methamphetamine was on Halloween 2013 and appellant was present. He further testified that appellant purchased pseudoephedrine for him on one occasion for use in the manufacture of methamphetamine.

{¶30} Viewing this evidence in a light most favorable to the prosecution, we hold that a rational jury could have found, beyond a reasonable doubt, that the elements of each count occurred on or between October 1, 2013, and November 2, 2013. There was sufficient evidence to support appellant's convictions of illegal manufacture of drugs, illegal assembly or possession of chemicals for the manufacture of drugs, endangering children, and aggravated possession of drugs.

{¶31} Although mentioned in her assignment of error, appellant provides no argument in support of her assertion that the convictions were against the manifest weight of the evidence. Nevertheless, upon review of the evidence outlined above, we find that the jury did not lose its way or create a manifest miscarriage of justice by finding appellant guilty of all four counts.

{¶32} Appellant's sole assignment of error is without merit.

{¶33} The judgment of the Ashtabula County Court of Common Pleas is affirmed.


DIANE V. GRENDELL, J.,

THOMAS R. WRIGHT, J.,

concur.