[Cite as *State v. Minich*, 2017-Ohio-9262.]

IN THE COURT OF APPEALS

ELEVENTH APPELLATE DISTRICT

LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2016-L-077** |
| PATRICIA M. MINICH, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas.
Case No. 2015 CR 000211.

Judgment: Affirmed.

*Charles E. Coulson*, Lake County Prosecutor, and *Anna C. Kelley*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Robert N. Farinacci*, 65 North Lake Street, Madison, OH 44057 (For Defendant-Appellant).

TIMOTHY P. CANNON, J.

{¶1} Appellant, Patricia M. Minich, appeals from the judgment entry of sentence issued by the Lake County Court of Common Pleas on June 24, 2016, following a jury trial, sentencing appellant to nine and one-half years in prison on various charges of theft, grand theft, and identity fraud. For the reasons that follow, the trial court's judgment is affirmed.

{¶2} Appellee, the state of Ohio, brought two separate indictments against appellant on September 18, 2015, and February 12, 2016, charging her with a total of 28 felony counts. After various amendments were made to these indictments, the cases were consolidated, and four counts were dismissed; 24 counts were renumbered and prosecuted at trial.

{¶3} Appellant was charged with multiple violations of R.C. 2913.02(A), which provides: "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: * * * (2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent; [or] (3) By deception[.]"

{¶4} Specifically, appellant was charged with eight counts of Grand Theft in violation of (A)(2) (Counts 1, 3, 5, 7, 9, 15, 17, 19); eight counts of Grand Theft in violation of (A)(3) (Counts 2, 4, 6, 8, 10, 16, 18, 20); three counts of Theft in violation of (A)(2) (Counts 11, 13, 21); and three counts of Theft in violation of (A)(3) (Counts 12, 14, 22). Each Grand Theft count was charged as a fourth-degree felony, the value of the property or services being $7,500 or more but less than $150,000. *See* R.C. 2913.02(B)(2). Each Theft count was charged as a fifth-degree felony, the value of the property or services being $1,000 or more but less than $7,500. *See id.* The victims of Counts 1-16 were alleged to be "Karyn E. Engel and/or Richard A. Engel and/or Jackson Hewitt"; the victim of Counts 17-22 was alleged to be the state of Ohio.

{¶5} Appellant was also charged with one count of Identity Fraud Against a Person in a Protected Class, in violation of R.C. 2913.49(B)(1), a felony of the second degree (Count 23); and one count of Forgery, in violation of R.C. 2913.31(A)(3), a felony

2

of the third degree (Count 24). The victim of these two offenses was alleged to be Richard A. Engel, an elderly person at the time of the offenses, to wit: between 66 and 68 years of age.

{¶6} The charges stem from appellant's employment with Karyn and Richard Engel, who own multiple Jackson Hewitt franchises located throughout northeast Ohio. Appellant began working for the Engels in 2002 as a tax preparer, then worked as a branch manager, and finally as the general manager of the franchises. The charges allege that appellant stole nearly $200,000 from the Engels and/or their franchises, between January 1, 2007, and July 30, 2014, by misappropriating cash funds and using company credit cards and bank accounts to pay for personal expenses without the Engels' consent. The charges also allege that appellant stole unemployment compensation benefits from the state of Ohio while working for the Engels and that she forged Richard Engel's signature on forms she submitted to receive the stolen benefits.

{¶7} At trial, the state established that as a result of these offenses, Chase Credit Card Services absorbed $76,978.96 of the unauthorized credit card charges; the Engels and/or their Jackson Hewitt franchises lost an additional $122,588.75; and the state lost $26,966.00.

{¶8} The jury found appellant not guilty of Counts 2, 4, 6, 8, 10, 12, 14, and 16.

{¶9} The jury returned a verdict of guilty on eleven violations of R.C. 2913.02(A)(2): four were fifth-degree Theft felonies (Counts 1, 11, 13, 21), and seven were fourth-degree Grand Theft felonies (Counts 3, 5, 7, 9, 15, 17, 19). The jury also returned a verdict of guilty on three violations of R.C. 2913.02(A)(3): one was a fifth-degree Theft felony (Count 22), and two were fourth-degree Grand Theft felonies (Counts

3

18, 20). Finally, the jury returned verdicts of guilty on Count 23, Identity Fraud Against a Person in a Protected Class, a second-degree felony in violation of R.C. 2913.49(B)(1), and on Count 24, Forgery, a third-degree felony in violation of R.C. 2913.31(A)(3).

{¶10} For purposes of sentencing, the trial court merged Counts 1, 3, 5, 7, 9, 11, 13, and 15, all of which had been committed against the Engels and/or their Jackson Hewitt franchises. The trial court found these offenses required merger, pursuant to R.C. 2913.61(C)(1), which provides, in pertinent part: "When a series of offenses under [R.C. 2913.02] is committed by the offender in the offender's same employment, capacity, or relationship to another, all of those offenses shall be tried as a single offense." The trial court also merged Counts 17 and 18, Counts 19 and 20, and Counts 21 and 22, all of which had been committed against the state of Ohio. Finally, the trial court merged Counts 23 and 24, which had been committed against Richard Engel, an elderly person at the time of the offenses. No other merger issues were raised at sentencing by either defense counsel or the prosecution. The state elected to proceed to sentencing on Counts 15, 18, 20, 22, and 23.

{¶11} Following a pre-sentence investigation, the trial court sentenced appellant to eighteen months each on Counts 15, 18, and 20, twelve months on Count 22, and four years on Count 23, all to be served consecutive to each other, for a total prison term of nine and one-half years. The trial court also ordered appellant to make restitution to the victims of the offenses: $26,996.00 to the state of Ohio; $122,588.75 to the Engels; and $76,978.96 to Chase Card Services.

{¶12} Appellant filed a notice of appeal from the trial court's sentencing entry and raises two assignments of error for our review.

4

**{¶13}** Appellant's first assignment of error states:

**{¶14}** "The court erred to the prejudice of the defendant by failing to merge counts seventeen through twenty-four for purposes of sentencing."

**{¶15}** Appellant argues the trial court failed to conduct a merger inquiry on Counts 17-24 and that the trial court should have merged, pursuant to R.C. 2941.25, Counts 17-24 as allied offenses of similar import.

**{¶16}** Appellant did not raise these arguments in the trial court and has, therefore, forfeited all but plain error review on appeal. *See* Crim.R. 52(B). "[A] forfeited error is not reversible error unless it affected the outcome of the proceeding and reversal is necessary to correct a manifest miscarriage of justice." *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, ¶3. Regarding issues of merger, the accused must "demonstrate a reasonable probability that the convictions are for allied offenses of similar import committed with the same conduct and without a separate animus; absent that showing, the accused cannot demonstrate that the trial court's failure to inquire whether the convictions merge for purposes of sentencing was plain error." *Id.*; *see also State v. Barnard*, 11th Dist. Ashtabula Nos. 2016-A-0010 & 2016-A-0011, 2016-Ohio-7842, ¶15-17.

**{¶17}** R.C. 2941.25 "incorporates the constitutional protections against double jeopardy. These protections generally forbid successive prosecutions and multiple punishments for the same offense." *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, ¶7. "Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." R.C. 2941.25(A).

5

"Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them." R.C. 2941.25(B).

{¶18} "The determination whether an offender has been found guilty of allied offenses of similar import 'is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct,' and 'an offense may be committed in a variety of ways'." *State v. Williams*, 148 Ohio St.3d 403, 2016-Ohio-7658, ¶18, quoting *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, ¶26 & ¶30. "As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when the defendant's conduct supports multiple offenses:

> (1) Were the offenses dissimilar in import or significance?
> (2) Were they committed separately? and
> (3) Were they committed with separate animus or motivation?

*Ruff*, *supra*, at ¶31; *see also id.* at ¶13, citing *State v. Moss*, 69 Ohio St.2d 515, 519 (1982). "An affirmative answer to any of the above will permit separate convictions." *Id.* at ¶31.

{¶19} "[T]wo or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at ¶23. The victim of Counts 23-24 was identified as Richard Engel; the victim of Counts 17-22 was

6

identified as the state of Ohio. Therefore, merger of Counts 23-24 with Counts 17-22 would have been improper.

{¶20} The trial court merged Count 17 into Count 18, Count 19 into Count 20, and Count 21 into Count 22. Therefore, the remaining argument is whether the trial court should have inquired into the merger of Counts 18, 20, and 22. The convictions for these three counts were for the unemployment compensation benefits appellant stole from the state of Ohio. On three separate occasions, appellant applied for unemployment benefits from the state; each application was a claim for benefits that was only good for one year. Appellant also submitted weekly claims for benefits during the time she was receiving them under each separate application. Count 18 refers to appellant's conduct that occurred between August 7, 2011, and January 21, 2012. Count 20 refers to appellant's conduct that occurred between August 4, 2012, and September 21, 2013. Count 22 refers to appellant's conduct that occurred between October 6, 2013, and January 25, 2014.

{¶21} Appellant's conduct resulted in three offenses of the same or similar kind, but each offense was based on a separate and distinct act, and each act had its own independent animus. Therefore, appellant cannot demonstrate that the trial court's failure to inquire whether the convictions for Counts 18, 20, and 22 merge for purposes of sentencing was plain error.

{¶22} Appellant's first assignment of error is without merit.

{¶23} Appellant's second assignment of error states:

{¶24} "The court erred to the prejudice of appellant by failing to dismiss and/or permitting a conviction on count 23 identity fraud."

7

{¶25} Appellant essentially argues the trial court should have granted her Crim.R. 29(A) motion for judgment of acquittal on Count 23, which charged Identity Fraud Against a Person in a Protected Class, in violation of R.C. 2913.49(B)(1).

{¶26} Crim.R. 29(A) requires the trial court to grant a motion for judgment of acquittal if the evidence is insufficient to sustain a conviction on the charged offenses. "Thus, when an appellant makes a Crim.R. 29 motion, he or she is challenging the sufficiency of the evidence introduced by the state." *State v. Patrick*, 11th Dist. Trumbull Nos. 2003-T-0166 & 2003-T-0167, 2004-Ohio-6688, ¶18.

{¶27} When reviewing whether sufficient evidence was presented to sustain a conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307 (1979). Thus, a claim of insufficient evidence invokes a question of due process, the resolution of which does not allow for a weighing of the evidence. *State v. Habo*, 11th Dist. Portage No. 2012-P-0056, 2013-Ohio-2142, ¶14.

{¶28} R.C. 2913.49(B)(1) provides: "No person, without the express or implied consent of the other person, shall use, obtain, or possess any personal identifying information of another person with intent to * * * [h]old the person out to be the other person[.]" Identity Fraud is generally a felony of the fifth degree. R.C. 2913.49(I)(2). When the victim of the offense is an elderly person, the degree of the offense is raised and is referred to as Identity Fraud against a Person in a Protected Class. R.C. 2913.49(I)(3). In this case, where the "value of the credit, property, services, debt, or

8

other legal obligation involved in the violation or course of conduct" was between $7,500 and $150,000, a violation of R.C. 2913.49(B)(1) is a felony of the second degree. *Id.*

**{¶29}** Appellant argues there was insufficient evidence that she committed this offense against a "person," under the plain language of the statute, because the identity or persona she assumed was that of an entity. In the alternative, if "person" is defined to include an entity, appellant argues there was insufficient evidence that she committed the second-degree felony version of this offense because an entity cannot be considered "elderly."

**{¶30}** Appellant was charged with violating R.C. 2913.49 by fraudulently assuming the identity of Richard Engel, an elderly person at the time of the offense. At trial, the prosecution introduced the form it alleged appellant submitted to the Office of Unemployment Compensation in October 2013, titled "Request to Employer for Separation Information," which included Richard Engel's personal identifying information (his name in the form of a purported signature). Richard Engel testified at trial that what was presented as his signature on that form was not actually his signature and that he did not authorize anyone to sign the form on his behalf.

**{¶31}** Appellant argues she was not employed by Richard Engel, but by Jackson Hewitt Tax Service, and therefore she would not have been permitted to collect unemployment benefits through Richard Engel. The culmination of her argument is the assertion that, if she fraudulently assumed the identity of anything, she fraudulently assumed the identity of Jackson Hewitt Tax Service, not Richard Engel.

**{¶32}** The applications appellant submitted for unemployment benefits each listed "Richard Engel" as her employer. In response to her applications, the "Request to

9

Employer for Separation Information" form was mailed and addressed to Richard Engel, not Jackson Hewitt, by the Office of Unemployment Compensation. The employer's certification at the bottom of the form includes Richard Engel's purported signature. The certification also indicates Richard Engel is the owner of Jackson Hewitt Tax Service; nevertheless, the form was addressed to Richard Engel, and it was purportedly signed by Richard Engel. Additionally, the multiple decisions issued to appellant by the Office of Unemployment Compensation, titled "Determination of Unemployment Compensation Benefits," identify Richard Engel as the employer; they do not mention Jackson Hewitt Tax Service. These documents were all presented by the state at trial. Diane Jarrell, a Claim Specialist with the Office of Unemployment Compensation tasked with investigating fraud, also testified that "Richard Engel we had as her employer and requested the wages that she had earned in the time period that she had collected benefits."

{¶33} The state therefore presented evidence, sufficient to survive a Crim.R. 29(A) motion, that appellant held herself out to be Richard Engel by submitting the form, which included Richard Engel's personal identifying information in the form of his purported signature, to the Office of Unemployment Compensation without Richard Engel's express or implied consent.

{¶34} Appellant's first argument is not well taken, and appellant does not dispute that Richard Engel was an elderly person at the time of the offense. We need not reach appellant's alternative argument regarding assigning an age to an entity.

{¶35} After oral argument, we granted the parties leave to file supplemental briefs on the issue of whether the "value of the credit, property, services, debt, or other legal

10

obligation" used to enhance the degree of the felony must be a financial loss that was incurred by the elderly victim.

{¶36} "No person, without the express or implied consent of the other person, shall use, obtain, or possess any personal identifying information of another person with intent to * * * (1) Hold the person out to be the other person[.]" R.C. 2913.49(B). "If the value of the credit, property, services, debt, or other legal obligation *involved in the violation or course of conduct* is seven thousand five hundred dollars or more and is less than one hundred fifty thousand dollars, identity fraud against a person in a protected class is a felony of the second degree." (Emphasis added.) R.C. 2913.49(I)(3).

{¶37} When the offender commits a violation of R.C. 2913.49(B) as "part of a course of conduct" that involves violations of R.C. 2913.02 (Theft) and R.C. 2913.31 (Forgery), "the court, in determining the degree of the offense pursuant to division (I) of this section, may aggregate all credit, property, or services obtained or sought to be obtained by the offender and all debts or other legal obligations avoided or sought to be avoided by the offender in the violations involved in that course of conduct." R.C. 2913.49(H)(1). "The course of conduct may involve one victim or more than one victim." *Id.*

{¶38} Here, appellant's course of conduct was committing Theft by wrongfully obtaining unemployment compensation benefits from the state and then committing Identity Fraud, by holding herself out to be Richard Engel and forging documents, in order to prevent discovery of her theft from the state. Thus, appellant's course of conduct involved more than one victim—Richard Engel (an elderly victim) and the state of Ohio.

11

The amount of "credit, property, or services obtained" by appellant as a result of this course of conduct was $26,996.00 in unemployment benefits.

{¶39} The state presented sufficient evidence to support the elevation of appellant's conviction of Identity Fraud to a felony of the second degree.

{¶40} Appellant's second assignment of error is without merit.

{¶41} The judgment of the Lake County Court of Common Pleas is affirmed.


DIANE V. GRENDELL, J.,

THOMAS R. WRIGHT, J.,

concur.